Thomas, Respondent, vs. Columbia Phonograph Company, Appellant.

*December 8, 1910—January 10, 1911.*

*Contracts: Construction: Questions for court: "Net profits:" Practical construction: Master and servant: Contract of employment: Commission on profits: Accord and satisfaction.*

1. The construction of a written contract is for the court; as is also the question what interpretation the parties placed thereon by subsequent written communications.
2. The term "net profits" and the word "profits" ordinarily mean the same thing.
3. The term "net profits," when applied to a course of dealing including several successive transactions, involves the idea of time and, if unqualified by custom, usage, or other words in the contract, ordinarily refers to the termination of the adventure. It may, however, refer to the expiration of some fiscal period, less than and within the period of adventure, at the end of which profits are to be computed.
4. Where the whole period of adventure covers several fiscal periods designated for the purposes of computation, losses and gains arising out of matters covered by the earlier fiscal period but occurring after ascertainment of the profits for that period are carried into and increase or diminish the net profits in the next or some succeeding fiscal period. Anything included in the profits of any fiscal period during the adventure which afterwards turns out to be a loss goes to diminish the net profits of the next or some succeeding period.
5. Where a contract of employment entitled the employee to receive a commission of ten per cent. of the net profits up to $2,000 per month and thereafter on the basis of five per cent. of such profits, and computations were made monthly, net losses in one month should be deducted from net profits in others in computing the commissions. The fiscal period for computation of the net profits in such case is the month, but the real period to which the term "net profits" refers is the period of the employment.
6. Rendering and receiving monthly statements in which the net profits of one month were reduced by the losses in another month also places this interpretation on the contract.

7. Where a check or draft is sent by letter with a statement of account showing a balance due the person to whom the letter is sent equal to the amount of the check or draft, together with a statement that this is sent as settlement in full, the party receiving such letter cannot accept and retain the avails of the check or draft and at the same time deny that he received it in full settlement.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Winkler, Flanders, Bottum & Fawsett,* and oral argument by *Charles E. Monroe.* They cited, as to the practical construction of the contract by the parties: *Nilson v. Morse,* 52 Wis. 240, 253, 9 N. W. 1; *Janesville Cotton Mills v. Ford,* 82 Wis. 416, 430, 52 N. W. 764; *Jones v. Thomas,* 120 Wis. 274, 280, 97 N. W. 950; *District of Columbia v. Gallaher,* 124 U. S. 505, 510. As to the meaning of "net profits:" *Wallace v. Beebe,* 12 Allen (94 Mass.) 354, 357; *Welsh v. Canfield,* 60 Md. 469, 475; *Park v. Grant L. Works,* 40 N. J. Eq. 114, 121; *McCulsky v. Klosterman,* 20 Oreg. 108, 10 L. R. A. 785, 788. As to accord and satisfaction: *Nassoiy v. Tomlinson,* 148 N. Y. 326, 331; *Kercheval v. Doty,* 31 Wis. 476, 484; *Zimmer v. Becker,* 66 Wis. 527, 531, 29 N. W. 228; *Galusha v. Sherman,* 105 Wis. 263, 268, 269, 81 N. W. 495. As to direction of judgment for defendant: *Rosenberg v. McKinney,* 138 Wis. 381, 120 N. W. 230.

For the respondent there was a brief by *Paul D. Durant,* and oral argument by *H. F. Friedrich.* As to construction of the contract they cited: *Braun v. Wis. R. Co.* 92 Wis. 245, 66 N. W. 196; *Gibbons v. Grinsel,* 79 Wis. 365, 48 N. W. 255; and other cases. To the point that there was no accord and satisfaction: 1 Cyc. 312, 313; *Weidner v. Standard L. & Acc. Ins. Co.* 130 Wis. 10, 110 N. W. 246; *Otto v. Klauber,* 23 Wis. 471; *Lathrop v. Knapp,* 27 Wis. 214; *Lerdall v. Charter Oak L. Ins. Co.* 51 Wis. 426, 8 N. W. 280; *Continental Nat. Bank v. McGeoch,* 92 Wis. 286, 66 N. W. 606;

*Herman v. Schlesinger,* 114 Wis. 382, 90 N. W. 460; *Prairie Grove C. Mfg. Co. v. Luder,* 115 Wis. 20, 89 N. W. 138, 90 N. W. 1085; *Canadian F. Co. v. McShane,* 80 Neb. 551, 114 N. W. 594.

TIMLIN, J.    The parties hereto entered into a contract as follows:

"May 7, 1904.    Confirming my personal interview of this date with you, you are hereby appointed manager of our Milwaukee office to take effect May 1st, 1904, at a salary of $25 per week, with a commission of one half ($\frac{1}{2}$) of one per cent. (1%) on the cash receipts of your office from sales, and ten per cent. (10%) of the net profits of the office up to a total profit of $2,000 per month; and thereafter on the basis of five per cent. (5%) of such profits; the profits in question to be determined at and by our executive office, and notice thereof to be duly sent you by such office as determined by them."

The plaintiff entered upon performance on May 1, 1904, and continued until early in the year 1908.    His salary of $25 per week was regularly paid.    Each month he sent a report to the executive office of the cash receipts during the month from sales at the Milwaukee office and received from the executive office a statement showing the receipts of the office, certain deductions therefrom, and the net profits for the month on which his commission was to be based.    He claims that, selecting two months in which there were net profits and rejecting three months in which there were losses and not deducting worthless accounts, commissions are due and in arrears to the amount of $152.90, and for this sum he had verdict and judgment.

The construction of this contract was for the court.    It is a contract of employment during the pleasure of either party, with three kinds of compensation: The wages which are fixed in rate measured by time; the percentage on cash receipts fixed in rate and easily measured by receipts; and the per-

·centage on net profits fixed in rates but measured by net profits, which is a more uncertain base of computation. "Net profits" is a term often employed in contracts and business transactions and has quite a definite legal signification, and its meaning cannot be left to the varying judgments of different juries. Like other phrases, its meaning may be modified or affected by the context, by associated words, or by the subject matter of the contract. *Park v. Grant L. Works,* 40 N. J. Eq. 114; *Welsh v. Canfield,* 60 Md. 469; *Wallace v. Beebe,* 12 Allen (94 Mass.) 354.

Under exceptional circumstances showing an intended distinction there might be a difference in the meaning of the words "net profits" and that of the word "profits," but usually they mean the same thing. *Hentz v. Pennsylvania Co.* 134 Pa. St. 343; *Eyster v. Centennial Board,* 94 U. S. 500; *Hubbard v. Brainard,* 35 Conn. 563; *Jones v. Davidson,* 2 Sneed (34 Tenn.) 447. When the words "net profits" are applied to a course of dealing involving several successive transactions, the idea of time is inseparably involved in the expression. For receipts and disbursements, gains and losses, in such case are never simultaneous, and some period is always meant at the end of which net profits may be ascertained. The words "net profits," unqualified by custom, usage, or by other words in the contract, would naturally refer to the termination of the adventure. They may also refer to the expiration of a year or other fiscal period at the end of which profits are to be computed, but which is a fraction of and within the period of adventure. But in this latter case, if the business continues and covers several of such fiscal periods and the period is for the purpose of computation only and not for the purpose of terminating the adventure, losses and gains arising out of matters covered by an earlier fiscal period, but occurring after ascertainment of the profits for that period, are carried into and increase or diminish the net profits in the next or some succeeding fiscal period. It does not necessarily alter

this that the parties are at liberty at the end of any fiscal period to draw out the profits or a fraction of the profits thus computed, if the adventure is to continue. This is illustrated by the ordinary profit and loss account closed at the end of a fiscal year. Anything thereafter realized thereon goes to increase the net profits of the next or some succeeding year. Anything included in the profits of any fiscal period during the adventure which afterwards turned out to be a loss goes to diminish the net profits of the next or some succeeding year. The contract in the instant case contains a provision that when the net profits exceed $2,000 per month the rate of plaintiff's percentage thereof drops to five per centum upon the net profits in excess of $2,000, and this requires a monthly balancing of expenses and losses against receipts in order to ascertain the net profits for the month. This month is a mere fiscal period, not the end of the venture. The contract does not require that transactions still open upon which money is to become due shall be carried into that month. These transactions are postponed to and carried into the month during which payment is made thereon. It would be an entirely unreasonable construction of this contract to hold that during the period of service the plaintiff might select those months which showed a net profit, compute his percentage on this net profit, and reject all those months which showed a loss. The true construction of this contract is that the fiscal period for computation of net profits is the month, but that the real period to which net profits refers is the period of plaintiff's service; and if by reason of net profits made during some months and losses incurred during other months of the period of plaintiff's service there is at the end no net profit at all, the plaintiff has not earned anything by way of percentages upon net profits. And this is the construction which the parties themselves have put upon the contract as shown by competent evidence consisting of monthly statements rendered to the plaintiff and the statement of commission account from

May 1, 1905, to July 31, 1906, also that of March 5, 1907, in which the net profits of one month were offset against the losses of other months.   The plaintiff acquiesced in this mode of computation.   On October 10, 1907, the plaintiff transmitted to the defendant a statement of "absolutely uncollectible accounts receivable."   There is some question raised as to the sufficiency of the identification of a list of such accounts produced.   It is claimed that it has not been shown that this was the list contained in plaintiff's letter.   However that may be, the defendant in its statement of March 17, 1908, in effect deducted these worthless accounts from assets in order to arrive at the net profits.   We have no way to ascertain whether they were theretofore taken into consideration as assets or resources.   If they were not, it was erroneous to deduct them.   If they were, it was proper to deduct them as diminishing the net profits which accrued during the term of plaintiff's employment.

We are not obliged to rule on the sufficiency of the identification of these accounts.   The defendant claimed the right to deduct these accounts and the monthly losses in arriving at the net profits upon which the plaintiff's commission should be based.   The plaintiff refused to acquiesce in this view. While this condition existed and on March 9, 1908, the defendant forwarded to the plaintiff a statement of account covering the period from August 1, 1907, to December 15, 1907, deducting losses and payments theretofore made and showing a balance of $16.68 due the plaintiff.   Inclosed with this was a check or draft for $16.68 and a statement that it was in full payment of the above account.   The plaintiff accepted this check or draft, replying under date of April 6, 1908, showing he understood that the $16.68 was sent him as settlement in full.   He returned the voucher unsigned but accepted the check.   His reasons for so doing were, that he thought he would take what he could get, "simply hung on to what I could get."   This brings the case within the rule of

*Nassoiy v. Tomlinson,* 148 N. Y. 326, 42 N. E. 715. The plaintiff could not accept the offer and avail himself of the funds without assenting to the condition upon which the offer was made.

On the whole case there was no question to go to the jury, no disputed issue of fact, merely the construction of the written contract and the effect of subsequent written statements upon the practical interpretation given to it by the parties. The plaintiff showed no right to recover on the evidence. *Hay v. Baraboo,* 127 Wis. 1, 105 N. W. 654.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.