## TERRITORY v. TUPPELA.

(First Division. Juneau. June 30, 1922.)

### No. 2073–A.

1. **Exchange of Property** 🔑1—Sales—Vendor and Purchaser—Contracts.

A sale has a definite meaning, as a contract to give and pass the right of property for a consideration in money which the buyer pays, or promises to pay, to the seller for the thing bought. The transaction is still a sale, although the transaction is made for something else than money, provided each article is transferred at an agreed or the market value, so that one thing is received in payment of the price of the other.

🔑See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

## 2. Taxation ⬅104—Sales of Real Estate—Licenses.

The territory of Alaska brought suit to recover tax laid by chapter 54, Sess. Laws of Alaska, 1919, on profits arising from sales of real estate. The admitted facts were that the defendant was the owner of valuable mining property, which was in the possession of another who claimed to have purchased it while defendant was in the insane hospital prior to the passage of the statute. Defendant employed Cobb and Winn, attorneys, to recover the property by a suit, agreeing to convey to them for their services as attorneys an undivided one-half interest in such property and proceeds as they could recover through the litigation. The litigation was successful, and defendant recovered his property, and conveyed one-half thereof to his attorneys. This suit was based on that transfer, the value of the property being admitted to be $300,000. The territory moved for judgment on the admissions in the answer. *Held*, the conveyance from Tuppela to Cobb and Winn was not a sale such as is contemplated by the act of the Legislature, but was a conveyance in discharge of a burden or liability imposed on the title of Tuppela to the property anterior to the taking effect of the statute, and therefore the tax could not be assessed thereon.

## 3. Taxation ⬅104—Words and Phrases—"All Profits."

The words "all profits," in section 1, c. 54, Sess. Laws of Alaska 1919, mean "net profits."

## 4. Taxation ⬅104—Profits on Sales of Real Estate.

The defendant was sued by the territory to recover the alleged profits on a sale of real estate. The defendant claimed to be the owner of certain mining claims in the possession of another who set up ownership therein obtained by purchase at guardian's sale while the defendant was in the insane asylum. Defendant employed attorneys to recover the property, agreeing to pay them by transfer of one-half of all of the property. They recovered the property. Defendant conveyed the half interest therein, and this suit is to recover profits under chapter 54, Sess. Laws of Alaska 1919, on that conveyance as a sale of real estate. *Held*, the consideration for the contract to the attorneys was a necessary expenditure to enable the defendant to recover the estate vested in him, and it was therefor not a profit at all, but was an expenditure for the benefit of the estate, and is not taxable under the statute.

This action was brought by the territory to collect a tax alleged to be due the territory from the defendant, Tuppela, under the provisions of chapter 54, Session Laws of Alaska 1919, on profits made by the defendant from the sale of certain min-

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing claims and capital assets in the territory ,to J. H. Cobb and John R. Winn in the year 1920.

The act referred to (section 1) provides that a tax of 1 per cent. shall be levied, collected, and paid upon all profits in excess of $1,000 received after the act shall become effective, and upon all sales of and contracts to sell real estate and other capital assets situated in the territory, whether the sale or contract be made within or without the territory. Then, after defining real estate and capital assets, the section further provides that, for the purpose of ascertaining gain or loss resulting from sales of property acquired prior to March 1, 1913, the fair market value of the property as of that date shall be deemed the basis for determining the amount of gain or loss, and, if the consideration be paid otherwise than in money, the fair market value of the consideration shall be deemed the selling price for the computation of the tax.

The territory alleges in its complaint that the defendant sold, on August 19, 1920, and conveyed by deed to J. H. Cobb and John R. Winn, an undivided one-quarter interest in the Over-the-Hill mining claim and an undivided one-half interest in the Rising Sun mining claim, in the Sitka mining district, Alaska, and that the consideration for said conveyance was other than in money and was for legal services rendered by the said Cobb and Winn, and that the said services were reasonably worth, and the fair market value thereof was, $400,000, that the interests so sold were acquired by the defendant prior to March 1, 1913, and that the fair market value thereof at that date was less than $100, and that the profit received by the defendant was $400,000, and that there is due, by virtue of the provisions of chapter 54, Session Laws of Alaska 1919, a tax on such profits of $3,000, with interest, etc.

The defendant, answering, denies that the fair value of the services rendered by Cobb and Winn were $400,000; denies that the value of the property conveyed to them was less than $100 on March 1, 1913, but alleges it to have been $75,000; denies that the profit defendant received from said transfer or alleged sale was $400,000, or any sum whatever; and denies that by reason of the conveyance stated any sum whatever became due the plaintiff. Defendant affirmatively alleges that chapter 54, Session Laws of Alaska 1919, is void

for the reason that there is no power vested in the Legislature of the territory of Alaska to pass such a law; and for a further affirmative defense the defendant alleges that the property and mining claims referred to in the complaint were acquired by the defendant prior to the year 1913; that on March 1 of the said year the said mining claims were of the reasonable value of $300,000, and that in the year 1914 the defendant was adjudged insane, and from June 11 of said year until September 17, 1917, he was confined, as an insane person, in the Morningside Asylum at Portland, Or.; that in the year 1915 the Chichagoff Mining Company, a corporation, claimed to have purchased the said property at a sale purported to have been made by a purported guardian of the estate of defendant, and that in the year 1917 said company began extracting and reducing in its plant gold-bearing ores from said claims, and thereafter, on or about the 8th day of May, 1919, this defendant, being without means other than his property, all of which was then in possession of the said Chichagoff Mining Company, employed John R. Winn and J. H. Cobb, as his attorneys, to bring an action for him against the Chichagoff Mining Company to recover said property and damages for depletion of the ores therein or for an accounting of such ores, and, in consideration of the services to be rendered by the said Winn and Cobb, the defendant practically agreed and bound himself to convey to the said attorneys an undivided half of his interest in said property and to pay them one-half of the sums to be recovered from said accounting. Thereafter such proceedings were had that on or about the 6th day of July, 1920, a final decree was entered in the said case in favor of the defendant and against the Chichagoff Mining Company, wherein and whereby he was adjudged to be the owner of an undivided half interest in the Over-the-Hill mining claim and the whole of the Rising Sun mining claim, and thereafter, in pursuance of the contract aforesaid, on the 19th day of August, 1920, defendant conveyed an undivided quarter interest in and to the Over-the-Hill and an undivided half interest in and to the Rising Sun claim to J. H. Cobb, who thereafter conveyed to John Winn an undivided half of the property so conveyed to him, and that the foregoing transaction is the identical alleged sale mentioned in said amended complaint, and that the defendant has never made any other or different sale thereof.

To this second affirmative defense so presented by the defendant, plaintiff has failed to reply, and in open court stated that the facts in said affirmative defense, as set forth, are confessed, and thereupon defendant has moved for judgment on the issues thus joined in the pleadings.

John Rustgard, Atty. Gen., for the Territory.

J. C. Cobb, for defendant.

REED, District Judge. The issues joined as the value of the property on March 1, 1913, and the market value of the services rendered to defendant as a consideration for the conveyance of August 19, 1920, are material only for the purpose of computation of the profits as a basis of the tax. If, therefore, under the affirmative decree set forth in the affirmative defense, it should appear that there is no profit on the conveyance or that there was no sale as contemplated by the statute, then there would be no reason for a consideration of the issues so joined in the pleadings. Under the statute, the tax of 1 per cent. is levied on profits upon the sale of and contracts of sale of realty and capital assets. The tax is imposed on the profits on sales and contracts. This necessitates considering: First, whether the transactions between the defendant and Cobb and Winn constituted a sale; and, second, if a sale, what the profit is on the sale as contemplated by the statute, and whether the consideration mentioned was a profit so contemplated by the Legislature in enacting the statute.

A sale has a definite meaning, as a contract to give and pass the rights of property for a consideration in money which the buyer pays, or promises to pay, to the seller for the thing bought. Williamson v. Berry, 8 How. (49 U. S.) 495, 12 L. Ed. 1170. In Tiedeman on Sales, par. 12, it is said that, although it has sometimes been said that "sale" must be a transfer for money, and that every other transfer is an exchange or barter, the better opinion is that the transaction is still a sale, although the transaction is made for something else than money, provided each article is transferred at an agreed or the market value, so that one thing is received in payment of the price of the other. Where lands are valued at a certain sum, and other lands are taken in payment therefor, valued at a less sum, and the difference is represented by

promissory notes, it meets the criterion prescribed, which is whether there is a fixed price as a determination of the value at which things are to be exchanged. If there is such a fixed price, the transaction is a sale, but, if there is not, the transaction is not a sale. Ullmann v. Land, 37 Tex. Civ. App. 422, 84 S. W. 294. But a review of the statute would seem to indicate that the tax may be levied on transactions where the consideration is paid other than in money, because it provides for determination of profits where the consideration is other than in money.

So, to determine the nature of the conveyance of August 19, 1920, between Tuppela and Winn and Cobb, it is necessary to consider the original contract of May 8, 1919, which was entered into before the act of the Legislature became effective. The defendant, Tuppela, prior to March 1, 1913, was the undisputed owner of the property described in the complaint. He was thereafter adjudged insane. After his recovery in 1917, and on May 8, 1919, the date of the contract of employment of Cobb and Winn, the Chichagoff Mining Company was in possession of the property referred to, claiming the title thereto under a purported sale of Tuppela's rights, title, and interest therein by his guardian. Tuppela entered into this contract on May 8, 1919, agreeing to convey one-half of the property recovered by suit before the courts in consideration of legal services rendered by Cobb and Winn. At the time of this contract the property had largely increased in value, but Tuppela's actual interest therein could not be estimated at a money value, nor could the value of the services to be rendered by the attorneys be estimated in money value. The contract for the transfer of an undivided half interest was therefore not a contract of sale, but was a contract for services to be rendered as attorneys for defendant and contingent on the success of the litigation. If the litigation resulted in favor of Tuppela, and the ownership and right of possession was finally decreed in him, the contract for the conveyance of an undivided one-half of the property recovered could be enforced as a lawful burden or claim against the title of Tuppela for services rendered in acquiring it. If the decree was adverse, and Tuppela had no title or right of possession, then the contract or claim would be no burden on the property. The conveyance of August 19, 1920,

was therefore no sale such as contemplated by the statute, but was a conveyance in discharge of a burden or liability imposed on the title of Tuppela to the property anterior to the taking of the effect of the statute, and therefor the tax could not be assessed thereon.

There is another consideration of facts which leads to the same conclusion. The tax is on the profits from the sale of real estate. The term "profits" on which the tax provided by chapter 54 is levied cannot, in my opinion, be deemed gross profits, but must be deemed net profits on the transaction, otherwise the tax would be discriminatory, unequal, and void. If it was contemplated by the Legislature that the tax shall be on the gross profits on the sale of real estate and was to be estimated by simply deducting the market value on March 1, 1913, from the market value of the property at the time of sale and imposing a tax of 1 per cent. on the profits so found, the tax would be discriminatory against every person improving his property. For example, A. and B. each have purchased, prior to March 1, 1913, adjoining lots, the fair market value of which on that date was $1,000. A. improves his lot by the erection of a building worth $100,000. B. allows his lot to remain entirely unimproved. A sale is made by both of them on January 1, 1920, from which A. receives $105,-000 for his lot and B. receives $5,000 for his. The territory would therefore be entitled to collect a tax of 1 per cent. on $104,000 from A. and from B. a tax on $4,000. This would be discriminatory against A. because his profit on the transaction would be only $4,000 and B.'s would be the same. The word "profits," in my view of the act, then, must be construed as net profits, which is the usual acceptation of the term "profits," whether used in statutes or contracts. The authorities are to this extent. Under exceptional circumstances, showing an intended distinction, there might be a difference in the meaning of the words "net profit," and that of the word "profits," but usually they mean the same thing. See Thomas v. Columbia Phonograph Co., 144 Wis. 470, 129 N. W. 522; Park v. Locomotive Works, 40 N. J. Eq. 114, 3 Atl. 162; Welsh v. Canfield, 60 Md. 469. The word "profit" implies, without more, the gain resulting from the employment of capital; the excess of receipts over expenditures. Fechteler v. Palm Bros. & Co., 133 Fed. 462, 66 C. C. A. 336. Profits represent the net gain

made from an investment or from the prosecution of some business. Webster defines the words as acquisition beyond expenditure.

It is evident that the consideration for the contract of transfer to Cobb and Winn of an undivided one-half of the property was a necessary expenditure to enable the defendant to recover the estate vested in him, and it was therefore not a profit at all, but was an expenditure for the benefit of the estate, and is not taxable under the statute. It may be argued, however, that the statute provides for the computation of the tax upon the difference in value between the date of the acquisition of the property and the date of sale, without provision for deduction on account of expense or betterment. It is true that no provision is made in the statute for deduction of expenses or betterments, and the statute is silent on that point, and provides that the fair market value on March 1, 1913, shall be the basis for computation of the tax on property acquired prior to that date, and the realty price, at the time of sale, shall also be taken into consideration, and one deducted from the other to determine the amount of the tax; but, taking the generally accepted view of the word "profit" to mean net profits, I consider that it was the intention of the Legislature, in passing the act, to provide for the taxation of net profits only. It is further my opinion that only by so considering the act can it be upheld, and not be in contravention of the uniformity clause of the enabling act.

---

⚖️See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes