ROBINSON and others, Executors, Respondents, vs. MARA-CHOWSKY, Appellant.

*September 18—October 14, 1924.*

*Sales: Misrepresentation by seller: Evidence: Trial: Failure to find fact: Effect: Accord and satisfaction: Check indorsed "payment in full."*

1. In an action by the seller for the price of sugar, part of which was refused by the buyer, the evidence is *held* to sustain a finding that the seller's salesman did not make false representations to the buyer as to the market price of the sugar at the time of taking the order. p. 606.
2. Where an accord and satisfaction was set up as a defense by the buyer, good faith is an essential element thereof, and the omission to make a special finding on that point is equivalent to finding against it, and cannot be alleged as error by the buyer. p. 606.
3. Where a part of the goods shipped were returned by the buyer, who sent a check for the portion retained, marked "in full payment of account," the seller's action in cashing the check, but without accepting the returned goods, did not amount to an accord and satisfaction. p. 607.

APPEAL from a judgment of the circuit court for Juneau county: E. W. CROSBY, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the plaintiffs for $803.68 damages and costs.

The plaintiffs are the executors of the George I. Robinson estate, of Milwaukee county, and conduct a wholesale gro-

cery business at Milwaukee under the name of George I. Robinson & Company. The defendant conducted a retail grocery store at Mauston, Wisconsin, and another at Lyndon Station. On the 21st day of July, 1920, *Irving P. Robinson* called at defendant's Mauston store and sold him on two separate orders ten bags of sugar and certain sundries to be delivered to the Mauston store, and ten bags of sugar and sundries for the Lyndon store. The order was taken by *Robinson* in a small memorandum book, and upon arriving at the store the following morning in Milwaukee these orders were entered in the regular order book, they being dated July 22, 1920. On the 23d the plaintiffs made arrangements to ship out the articles ordered, but were prevented from doing so because the railroad freight depot closed at 4 o'clock p. m. At about 8 o'clock of the following morning, the shipment being prepared and ready to be delivered to the railroad, plaintiffs ascertained that two postal cards had been received at plaintiffs' place of business, each bearing the postal stamp indicating that they had been sent on the 23d, one of which postals contained a message by which the sugar order for Mauston was increased from ten sacks to forty sacks, while by the other card the defendant requested plaintiffs to rush out the sugar at once. Pursuant to such requests the plaintiffs added thirty sacks of sugar to the shipment for Mauston, and the merchandise was immediately thereafter delivered to the freight depot of the Northwestern road at Milwaukee. At about 11:30 o'clock a. m. of July 24th the defendant at Mauston telegraphed the plaintiffs to cancel all sugar orders, and this message was received at Milwaukee by the plaintiffs at about 1 o'clock p. m., too late to interfere with the shipment, because during the month of July the freight depot closed its business for the day at that time. On the Monday following, which was July 26th, the defendant was informed by the plaintiffs, by mail, that his order of cancellation had arrived too late; that they would have been willing to cancel the order had it been received timely, and that they would insist upon payment.

On the 3d of August of the same year the defendant wrote the plaintiffs a letter as follows:

                                    Mauston, Wisconsin, 8–3–20.
Geo. I. Robinson Co., Milwaukee.
    Gentlemen: Check inclosed.
7—24   Invoice ................. $60  12
7—24   Invoice ................. 930  44
        Sugar returned, 25 sacks.................$575  00
              Allowance tob. .....................   3  00
              Discount ..........................   3  55
                  "        ..........................   1  14
25 sacks sugar returned.
Freight prepaid.           Yours truly, A. MARACHOWSKY.

Defendant also inclosed a check, as follows:

In full payment of account as follows:

July 24 invoices.$930  44
25 bags sugar re-
    turned ...... 575  00
        Discount.... 3  55
            $60  12
Allowance ..... 3  00
        Discount.... 1  14
                    ————
    Net am't....$407  87

A. MARACHOWSKY. No. 2210.

Mauston, Wis., 8/3,
    1920 ..........$407  87
    Pay to order of Geo. I. Rob-
inson & Co. Four hundred seven
and 87-100 dollars.
            A. MARACHOWSKY.
        By J. H. Marachowsky.

To State Bank of Mauston.
    79–314                    Mauston, Wis.

Plaintiffs duly indorsed and collected said check.

The twenty-five bags of sugar were immediately there-after shipped by the defendant to the plaintiffs, but the plaintiffs refused to accept the same. Prior to the receipt of the letter and check above referred to, some correspond-ence by mail, telegraph, and telephone was had between the parties, it being claimed by the defendant that the price of sugar had been misrepresented by the plaintiffs at the time of the sale; that the plaintiffs stated that sugar was ad-vancing in the market and that the market price thereof was

$28.50 per hundred.   It was also claimed by the manager of the Mauston store that the statement alleged to have been made by the salesman of the plaintiffs was not true, and that sugar could have been bought on that day for $21 per hundred pounds, and that upon receiving such information he sent the telegram of cancellation.   An expert witness for the defendant also testified that on or about the 21st of July sugar was offered at various prices ranging between $18 up to $23 per hundred and that brokers were scrambling to unload their sugar.   The main defense of the defendant is that the sending of the letter, together with the check and the cashing of the check by the plaintiffs, constituted an accord and satisfaction.

Upon the close of the testimony each party made a motion for a directed verdict, and the court thereupon dismissed the jury and determined the issue by making and filing findings of fact and conclusions of law and in ordering judgment in favor of the plaintiffs in accordance with the prayer of the complaint.   Judgment was thereupon entered in plaintiffs' favor, and from such judgment the defendant appealed.

For the appellant there was a brief by *McFarlane & Loomis* of Mauston, and oral argument by *J. A. McFarlane*.

*Clinton G. Price* of Mauston, for the respondents.

DOERFLER, J.   In its findings of fact the court in substance, among other things, found that the defendant first ordered the ten bags of sugar, together with certain articles of merchandise, to be delivered at the Mauston store, and ten bags of sugar, together with other articles of merchandise, for the store at Lyndon Station; that before the shipment of the articles above mentioned, plaintiffs received the two postal cards above referred to, by which the Mauston order was increased from ten bags to forty bags; also that such postal cards were received by the plaintiffs on the

morning of the 24th of July at about 8 o'clock, and that the telegram was received by the plaintiffs at about 1 o'clock p. m., after the plaintiffs had delivered the entire shipment to the railroad company, f. o. b, and that such shipment constituted a completed delivery; that no false representations were made by the plaintiffs to the defendant in securing the order for the sugar in question; and that there was no accord and satisfaction. No request for a finding was made by the defendant to the effect that the effort to compromise the alleged differences between the parties was made in good faith.

It appears conclusively from the record that the salesman, *Robinson,* started on his trip to Mauston on the 21st of July, and arrived there in the afternoon of that day. Defendant's contention is that the order was taken on the 23d of July, and that he received notice of the break in the price of sugar immediately after sending the two postal cards and before the telegram of cancellation was sent. The record shows beyond dispute that when *Robinson* arrived at his place of business on the morning of the 22d he made out the formal order, which was dated the 22d. On the 23d the plaintiffs made out the bill of lading, as appears from the date thereon. The postal cards were received at about 8 o'clock on the morning of the 24th, showing that they were mailed from Mauston on the 23d. The telegram of cancellation itself bears evidence of the time of sending, and the bills of lading of the railroad company show the receipt of the shipment by the company as above indicated. It thus appears quite conclusively from the record that a determined effort was made on the part of the defendant to advance the date of the order from the 21st to the 23d, at which time his excuse for cancellation on account of an alleged break in the market would appear more plausible. This goes to the question of the defendant's good faith in the attempted accord and satisfaction. The only expert of the

defendant testified that sugar was offered at Mauston by various dealers on the 21st for $23 per hundred, and less.

It is a well known fact that during the period of these transactions there existed a great shortage of sugar, and that for a long time prior to the 21st day of July large amounts of sugar were held by jobbers and brokers who speculated in the market. In order to relieve the situation the United States Food Administration by an order duly fixed the gross profit of the jobbers on sugar sales. Brokers in the country everywhere were heavily indebted for sugar bought or contracted for, and in order to meet their obligations they were compelled to incur large obligations to the banks. Through the action of the Federal Reserve banks the loans of brokers and jobbers were called, and this resulted in a demoralization of the standard price of sugar, the brokers making an effort to undersell each other in order to dispose of their holdings, so as to enable them to realize money with which to meet their loans. There is no evidence, however, that on the 21st of July any material change had taken place in the price of sugar on the market. The testimony of defendant's expert witness was indicative of a general scramble of some brokers to unload at the best prices obtainable.

The finding of the court that there were no false representations made by the salesman as to the market price of sugar at the time the order was taken is amply supported by credible evidence, and is so strong as to be nigh conclusive in this case. It also appears from the correspondence between the parties that when the dispute arose as to the market price of sugar at the time of the sale, the defendant merely asked for an allowance or adjustment on the basis of two cents per pound. In any event the record is absolutely devoid of any evidence which would indicate that, assuming that the market price of sugar had declined on the 21st of July, the salesman of the plaintiffs had any

knowledge thereof. He left Milwaukee that morning at 4 o'clock and did not arrive at Mauston until the afternoon of that day, when he immediately proceeded to the defendant's store. There is no evidence in the case that the salesman had any better knowledge of the market price of sugar than the defendant had. Defendant came in contact with traveling salesmen daily, who informed him of the market price of sugar, and he subscribed for a daily paper which had quotations of the market price. In the absence of satisfactory evidence showing a break in the market on or prior to the 21st of July, the learned circuit court was fully justified in its finding of fact wherein it found contrary to the claim of false representations.

The attitude of the defendant throughout the entire proceedings, wherein he attempted to advance the date of the sale of the sugar to the 23d, when as a matter of record evidence it is conclusively shown that the sale was made on the 21st, is not indicative of good faith on the part of the defendant. A careful reading of the testimony creates a strong impression that the dispute upon which defendant bases his alleged accord and satisfaction was arbitrary, unwarranted and unjustifiable, and not advanced in good faith. True, the court did not make a specific finding on the subject of good faith, but the findings actually made, taken in connection with the entire record, show that the learned circuit judge was of the opinion that the attempt to prove an accord and satisfaction was not made in good faith. As the question of good faith is one of the essential elements in an accord and satisfaction, an omission to make a special finding on that point is equivalent to finding against it, and cannot be alleged as error. *Karnes v. Karnes,* 140 Wis. 280, 122 N. W. 717; *Triba v. Lass,* 146 Wis. 202, 131 N. W. 357; *Wolf Co. v. Kutch,* 147 Wis. 209, 132 N. W. 981.

An accord and satisfaction in this case would require the making of a new contract as a substitute for the old, and such a contract requires a consideration. In cashing the

check the plaintiffs received that only to which they were properly and legally entitled. They were under no obligations to accept a return of the twenty-five bags of sugar, and they never did accept a return. Consequently there was no accord and satisfaction and there was no consideration. *M. Schulz Co. v. Gether*, 183 Wis. 491, 198 N. W. 433; *Weidner v. Standard L. & A. Ins. Co.* 130 Wis. 10, 110 N. W. 246; *Herman v. Schlesinger*, 114 Wis. 382, 90 N. W. 460. The judgment of the circuit court must therefore be affirmed.

*By the Court.*—Judgment affirmed.