PETERSIME INCUBATOR COMPANY, Appellant, vs. KLINKE, Respondent.

*December 5, 1945—January 8, 1946.*

For the appellant there was a brief by *Emil C. Cady* and *Richard R. Rynders,* both of Madison, and oral argument by *Mr. Rynders.*

For the respondent there was a brief by *Rieser & Mathys* of Madison, and oral argument by *Clifford G. Mathys.*

FRITZ, J.    For consideration of the controlling issues on this appeal it suffices to note the following matters.    On April 22, 1943, defendant owed plaintiff $1,602.06, plus interest, at six per cent per annum, on the following notes, dated August 28, 1942, to wit : A balance of $406.25 on a note for $500, principal, due May 1, 1943 ; a note for $500, principal, due June 1, 1943 ; and a note for $695.81, principal, due July 1, 1943.    These were the last of a series of renewal notes given for the unpaid balance of the purchase price to be paid by defendant to plaintiff on its sale of hatchery equipment in August, 1935, under a conditional sales contract, in which it was provided that in case of default in paying any part of the purchase price when due, the entire amount shall become due at once.    In accordance with that contract defendant gave to plaintiff twelve notes for instalments of the purchase price, and as they became due in the years 1936, 1937, and 1938 defendant paid them in part and for unpaid balances thereof

gave renewal notes for which, if not paid in full when due, subsequent renewal notes were in turn given by defendant and accepted by plaintiff for the unpaid balances. The three notes, dated August 28, 1942, were the last renewal notes; and by plaintiff's acceptance of that series of notes the time for the payment of the balance of the purchase price was extended to the respective due dates of those three notes.

Prior to those due dates, defendant stated in a letter to plaintiff, dated at Madison, Wisconsin, on April 22, 1943, the following:

"I recently received a statement from you showing a balance due you of $1,670.50 represented by the following notes and interest:

| | | | | | |
|---|---|---|---|---|---|
| 11–15–42 | $ 406.25 | Int. at 6% to | 5–1–43 | | $11.15 |
| 9– 1–42 | 500.00 | " " " " | 6–1–43 | | 22.50 |
| 9– 1–42 | 695.81 | " " " " | 7–1–43 | | 34.79 |
| | $1,602.06 | | | | $68.44 |

. . . At present it is necessary for me to adjust my finances to liquidate this old indebtedness so that I can procure a loan from the bank and re-establish my credit and pay my accounts currently. I have written to my creditors and the response has been very favorable. . . . I would like to have *you consider reducing your balance* and with *some expression from* you as to *how far you will help me* I will be able to review my affairs with the bank and make arrangements to pay you."

Plaintiff, in a letter to defendant dated at Gettysburg, Ohio, May 4, 1943, replied as follows:

"Your letter of April 22, has been handed to me. . . . We do appreciate your business and we will do this which is our very best we can do—*you pay all the interest plus one half the principal,* but this would have to be taken care of very soon."

Defendant, in a letter to plaintiff, dated May 18, 1943, replied:

"We thank you for your letter of May 4th and appreciate your co-operation. *In accordance with your adjustment we*

*inclose our check No. 3366 for $869.47 in full of the amount due you. This figure is arrived at by taking the interest in full of $68.44 and one half of the principal of $1,602.06. . . .* will you please send the canceled notes *so that I can close my records on this transaction."*

And on the face of defendant's check for $869.47, inclosed in that letter, there was written: "Payment of account in full to date." On May 21, 1943, plaintiff wrote defendant:

"We are in receipt of your letter of May 18 with inclosed check of $869.47, for which we thank you. We are crediting your account as follows and will return your paid note at a slightly later date:

| | |
|---|---|
| Pays Int. to 5/20/43 on 5/1/43 note... | $ 12.52 |
| Pays above note in full............. | 406.25 |
| Pays Int. to 5/20/43 on 6/1/43 note... | 21.65 |
| Pays on princ. of above note........ | 429.05 |
| | $869.47 |

"As it is customary for us to figure the interest to date and then apply the balance on the principal is the reason why we have not credited your account as your figures."

Defendant's inclosed check, with the notation "Payment of account in full to date," for $869.47, was indorsed by the plaintiff, and caused by it to be presented to and honored on May 29, 1943, by the Bank of Madison, which charged it to defendant's account. In a letter dated June 23, 1943, plaintiff returned defendant's note for $500 due May 1, 1943, and stated:

"We would appreciate receiving another payment this season."

Thereupon defendant replied in a letter to plaintiff, dated June 28, 1943, that settlement was made by the check of $869.47, and defendant requested the return of the canceled notes. In subsequent letters, plaintiff continued to claim that a balance was owing by defendant and he continued to claim that they had made a settlement.

The above-quoted excerpts from his letter of April 22, 1943, to plaintiff, and particularly defendant's request—

"I would like to have you *consider reducing your balance* and with *some expression* from you as to *how far you will help me* I will be able to review my affairs with the bank and make arrangements to pay you,"—

considered in connection with plaintiff's reply in its letter of May 4, 1943,—

"We do appreciate your business and we will do this which is our very best we can do—*you pay all the interest plus one half the principal,* but this would have to be taken care of very soon,"—

reasonably warranted the trial court's finding,—

"3. That on May 4, 1943, the plaintiff offered to settle the entire amount of said principal and interest if the defendant would pay to it the sum of $869.47."

Likewise, the court's finding,—

"4. That on May 18, 1943, the defendant accepted the said proposal and remitted to the plaintiff, his check in the said sum of $869.47,"—

was warranted (1) by the statements in defendant's letter of May 18, 1943, to plaintiff,—

"We thank you for your letter of May 4th and appreciate your co-operation. *In accordance with your adjustment* we inclose our check No. 3366 for $869.47 in full of the amount due you. This figure is arrived at by taking the interest in full of $68.44 and one half of the principal of $1,602.06. . . . Will you please send the canceled notes so that I can close my records on this transaction,"—

and (2) by the notation "Payment of account in full to date" on defendant's inclosed check of May 18, 1943, for

$869.47. By defendant thus accepting by his letter of May 18, 1943, inclosing his check for $869.47—(which is one half of the amount of the principal, plus all the interest to accrue to the due date of the notes, as shown in plaintiff's statement, mentioned in defendant's letter of April 22, 1943), after the receipt by defendant,—in response to his request that plaintiff consider reducing its balance,—of its proposal "you pay all the interest plus one half the principal," there was concluded a contract of settlement and an accord and satisfaction binding on both parties and not subject to modification by either without the consent of the other. No modification was or could be effected by the unauthorized use of defendant's check for $869.47 by plaintiff's application thereof in the manner stated in its letter of May 21, 1943. In view of the unambiguous and definite statement in defendant's letter of May 18, 1943, that "In accordance with your adjustment we inclose our check No. 3366 for $869.47 in full of the amount due you," and the written statement "Payment of account in full to date" on that check, the proceeds thereof could not be applied by defendant otherwise than in the manner stated in defendant's letter and on his check. Plaintiff could have refused to accept the check under the conditions stated thereon and in defendant's letter, but there is no such refusal stated in plaintiff's letter of May 21, 1943. On the contrary, the only reason stated therein for not crediting defendant's account as figured in his letter (of May 18th) is that "it is customary for us to figure the interest to date and then apply the balance on the principal." The significance or bearing of the reason thus stated does not appear, but it certainly did not constitute an unequivocal refusal to use the check for the purpose specified by defendant. Under the circumstances there were warranted the court's finding and conclusions of law:

"8. That the plaintiff has at all times retained the payment so made by the defendant and has at no time offered to restore

the parties to the status existing before the said agreement was entered into."

"1. That the agreement which was fully executed whereby the plaintiff agreed to accept the sum of $869.47 in full settlement of its claim against the defendant, and the acceptance and retention thereof by the plaintiff in full settlement of its obligations against the defendant is a valid and binding agreement.

"2. That there is nothing due from the defendant to the plaintiff upon the notes referred to in the complaint."

As there was no dispute in this case in relation to the amount owing on the notes for principal and the amount of interest which would accrue thereon upon maturity, it is necessary, in order to effect a valid discharge of defendant's obligations by his payment of less than those amounts pursuant to an accord and satisfaction, that there was a consideration for the settlement agreement. The notes in effect, at the time the settlement was consummated on May 18, 1943, were due the 1st day of May, June, and July, 1943, respectively. Consequently, in so far as defendant's payment on May 18, 1943, was made to satisfy the notes due on June 1st and July 1st, respectively, it constituted the satisfaction thereof in advance of their dates of maturity and such payment in advance, together with the advance payment in full of all interest which would have accrued thereon up to their due dates, constituted sufficient consideration to support the contract of accord and satisfaction.

As the court said in *Palmer v. Yager,* 20 Wis. *91, *99,—

"If the original contract be for the payment of a sum of money undisputed, and the substituted one be for the payment of a less sum, and not at a different time nor in a manner more advantageous to the creditor, it cannot be sustained as an accord and satisfaction though expressly so agreed. . . . But if by the original contract the money is not yet due, and that which is substituted provides for an earlier payment, it is a good accord and satisfaction. The creditor has his advantage in the earlier payment of the money. . . . In such cases, in the absence of fraud, courts will not inquire into the value of

the property to be received or delivered, or the labor to be performed, in satisfaction of the pre-existing obligation, but leave the creditor to judge for himself, as in other transactions. It is presumed that he found it for his advantage, else he would not have entered into the substituted contract. Mere inadequacy of consideration constitutes no ground of impeachment, more than in other cases of contract. It is enough if it appears that the creditor receives any distinct benefit from the substituted contract, which otherwise he would not have had."

Likewise in point is the decision in *Herman v. Schlesinger,* 114 Wis. 382, 400, 401, 90 N. W. 460. After stating in relation to the consideration, "admit that it was of slight, almost trifling character, yet it must be held to have been sufficient to make a good accord and satisfaction," the court stated the following:

"The rigorous rule of the common law, permitting a person to receive part of an undisputed, presently due indebtedness, pretending to accept the same in satisfaction of the whole indebtedness, the debtor parting with the amount paid with that understanding, and then change front and sue for the balance of such indebtedness on the ground that the release thereof was void for want of consideration, is so little favored by courts that it is commonly held not to apply where anything, whether of advantage to the creditor or disadvantage to the debtor, can be reasonably said to stand for that part of the indebtedness not measured by an equivalent in money actually paid to the creditor. . . . It is said that there is *sufficient consideration* moving with the part payment to release an indebtedness to take the transaction out of the common-law rule, *if* the debtor does anything which he is not bound by law to do, or omits to do anything which he has a right to do, to the advantage, in any appreciable degree, of the creditor, or the disadvantage of himself; that the consideration, in addition to money paid, 'may consist of anything which might be a burden to the one party or benefit to the other.' *Watson v. Elliott,* 57 N. H. 511; *Jaffray v. Davis,* 124 N. Y. 164, 26 N. E. 351; *Maddux v. Bevan,* 39 Md. 485."

Consequently, in the case at bar it follows that, as the court rightly found and concluded,—

"the . . . agreement between the parties for the settlement in full of the indebtedness due from the defendant to the plaintiff was supported by adequate consideration in that: . . . It was a benefit to the plaintiff and a detriment to the defendant in that the plaintiff received payment upon two of its notes before the same were due."

". . . the agreement which was fully executed whereby the plaintiff agreed to accept the sum of $869.47 in full settlement of its claim against the defendant, and the acceptance and retention thereof by the plaintiff in full settlement of its obligations against the defendant is a valid and binding agreement."

*By the Court.*—Judgment affirmed.