CONTINENTAL INFORMATION SYSTEMS CORPORATION, Appellant, v MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

Fourth Department, November 13, 1980

APPEARANCES OF COUNSEL

*Lombardi, Devorsetz, Stinziano & Smith (William J. Gilberti* of counsel), for appellant.

*Samuel C. Cantor (James Corcoran* of counsel), for respondent.

OPINION OF THE COURT

CALLAHAN, J.

The issue presented is whether on the facts herein there

was a valid accord and satisfaction as determined by the court or whether plaintiff made a proper reservation of rights within the purview of section 1-207 of the Uniform Commercial Code.

The plaintiff-appellant Continental Information Systems Corp. (CIS) sells computers. It acquires favorable "on order" positions with IBM, then markets the equipment when IBM increases its sales price to its customers. On June 28, 1973 the parties thereto executed an agreement providing for the sale of two data processing systems designated by IBM as system numbers 13408N and 13408K. The agreement provided for the sale of these specifically identified systems to the defendant-respondent Mutual Life Insurance Co. of New York (hereinafter referred to as MONY) in December, 1973 and January, 1974 and provided that: "On the date of installation by IBM for use CIS will convey title of the EQUIPMENT to MONY at IBM's then current purchase price plus any applicable taxes and transportation charges". It is undisputed that plaintiff purchased each system from IBM at a cost of $1,776,715. However, prior to the date of installation IBM announced a 2% price increase which, although not applicable to IBM's sales to CIS, increased the cost of similar systems to $1,812,310.50.

On October 31, 1973, CIS informed MONY that IBM would not increase the prices of either data processing system prior to installation. However, on December 18, 1973, CIS sent MONY two invoices which included the 2% price increase, claiming that the invoices reflected IBM's then current sales price. In a letter dated December 20, 1973, MONY rejected the invoices asserting that it was only obligated to pay CIS whatever CIS actually paid IBM, writing "The contract states that on the date of installation by IBM, CIS will convey title of the computers to MONY at IBM's then current purchase price for the computers in question. The terms are payment in full upon conveyance of title". CIS in its response dated December 28, 1973 appeared to reject this position and proposed a modification of the contract provision requiring payment in full upon conveyance of the title, stating: "CIS would agree

to close the transactions at the lower of two prices which we have discussed and to settle the final prices or other consideration after the installations are completed. Accordingly, we are invoicing MONY and receiving from MONY $1,776,715.00 plus sales tax for each system while at the same time not waiving our claim to an additional $41,955.00 plus tax for each system". MONY did not respond to this proposal and IBM proceeded to install the two systems in MONY's offices. MONY then tendered checks to CIS in the amount of $1,776,715 plus tax. The checks were not conditioned in any way nor were they restrictively endorsed by CIS. CIS then conveyed title to MONY by unconditional bills of sale which stated the consideration to be $1,776,715 for each system.

Thereafter, on March 15, 1976 CIS commenced this action against MONY by verified complaint seeking the balance it claims due on each unit plus interest, costs and disbursements. In its verified answer, MONY sets forth an affirmative defense asserting accord and satisfaction. In July, 1976 MONY moved for summary judgment and/or in the alternative for an order pursuant to CPLR 3211 (subd [a], par 5) dismissing the complaint. In its memorandum decision the court found an issue of fact in the parties' dispute over the meaning of the contract provision providing for payment by MONY of IBM's then current purchase price and denied the motion for summary judgment but granted the alternative relief requested pursuant to CPLR 3211 and dismissed CIS' complaint on the grounds of accord and satisfaction.

We note that Special Term erred procedurally insofar as it granted defendant's motion pursuant to CPLR 3211 (subd [a], par 5). Motions to dismiss under CPLR 3211 must be made within the time allotted for the return of a responsive pleading (CPLR 3211, subd [e]). Defendant served an answer and did not for a substantial period of time seek to make a CPLR 3211 motion. The motion was, therefore, untimely; however, a court may consider the motion as one for summary judgment under CPLR 3212 (see Siegel, New York Practice, § 283, p 339).

Traditionally CIS's purported reservations of rights

would have been unavailing (see *Hudson v Yonkers Fruit Co.*, 258 NY 168; *Rosenblatt v Birnbaum*, 16 NY2d 212; *Hirsch v Berger Import & Mfg. Corp.*, 67 AD2d 30). At common law the seller could not accept the proffered payment and reserve his right to sue for the balance. Acceptance of payment after an indication that a party regards such payment as in full would have according to common law given rise to an accord and satisfaction. Sellers were presented with a clear either/or choice of accepting the payment in settlement of the entire obligation or returning the check.

In 1962 New York adopted the Uniform Commercial Code, effective September 27, 1964, to reflect Twentieth century changes in commercial practice. Section 1-207 thereof provides: "A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient."

The Official Comment to section 1-207 of the Uniform Commercial Code indicates the intended adoption of a mercantile practice already in existence and not necessarily the abrogation of an established rule of law. The New York annotation to the Official Comment, however, is more explicit: "This section permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment, performance, etc., without losing his rights to demand the remainder of the goods, to set-off a failure of quality, or to sue for the balance of the payment, so long as he explicitly reserves his rights. * * * The Code rule would permit, in Code-covered transactions, the acceptance of a part performance or payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the performance or payment." (New York Anns. to Official Comment, McKinney's Cons Laws of NY, Book 62½, Uniform Commercial Code, § 1-207, p 65.)

The interpretation contained in the New York annotation has met with mixed reviews. Some recognized authori-

ties in commercial law query the practical usefulness of section 1-207 of the Uniform Commercial Code (see Hawkland, The Effect of U.C.C. § 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check, 74 Comm LJ 329; Rosenthal, Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code, 78 Col L Rev 48). Their concern is that such application will deter timely informal settlements in commercial disputes which have historically been accomplished by the "in full payment" check and hence has the potential to encourage litigation. Other jurisdictions have rejected any interpretation which would undermine the ability of purchasers to offer an accord without risk of having sellers ignore payment conditions, retaining a tendered check as a partial payment (see *State Dept. of Fisheries v J-Z Sales Corp.*, 25 Wash App 671). Some leading authorities acknowledge that offering a reasonable payment in full satisfaction of a valid obligation inflicts an exquisite form of commercial torture on the payee and agree that at least to conditional check situations where proper reservations appear, the provisions of section 1-207 of the Uniform Commercial Code apply (see White & Summers, Uniform Commercial Code [2d ed], § 13-21, p 544). To date our courts have applied section 1-207 in the manner suggested by the annotation thereby abrogating in part the common law of accord and satisfaction (see *Ayer v Sky Club*, 70 AD2d 863; *Lange-Finn Constr. Co. v Albany Steel & Iron Supply Co.*, 94 Misc 2d 15; *Hanna v Perkins*, 2 UCC Rep Serv 1044 [County Ct, Westchester County]). Other jurisdictions have also applied the statute consistent with the interpretation (see *Baillie Lbr. Co. v Kincaid Carolina Corp.*, 4 NC App 342).

■ MONY urges that section 1-207 of the Uniform Commercial Code applies only to one particular commercial transaction, namely, the accord and satisfaction by way of "conditional check". In our view, however, there is nothing in the language of the Code imposing such a limited application to section 1-207 of the Uniform Commercial Code. We are required liberally to construe and apply the provisions of the Uniform Commercial Code to promote its underlying purposes and policies (Uniform Commercial Code, § 1-102). Inasmuch as a buyer's performance under

a contract for the sale of goods consists largely and often solely of the payment of the purchase price, a partial payment situation such as presented herein is clearly within the scope of the statute. Therefore, while MONY's letter of December 20, 1973 may be read as imposing a condition to the acceptance of payment in full, since section 1-207 of the Uniform Commercial Code applies to this transaction, CIS by complying with the requirements of that provision explicitly reserved its rights in its December 28, 1973 letter of response.

MONY further contends that CIS may not dispute the terms of the bill of sale which is signed and delivered to defendant with full knowledge of the controversy. Moreover, maintains MONY, since CIS delivered two executed unconditional bills of sale reciting the amount paid by MONY, CIS is therefore bound by the terms therein. MONY impliedly invokes the parol evidence rule to estop CIS from denying its recital of consideration in the bill of sale. However, we note the authority relied upon by MONY predates the adoption of the Uniform Commercial Code and its more relaxed attitude towards the introduction of parol evidence in regard to article 2 transactions (see Uniform Commercial Code, § 2-202). Furthermore, the parol evidence rule generally permits the introduction of evidence which contradicts the recited consideration and which tends to show that the true consideration is other than that recited in the bill of sale (see 3 Corbin, Contracts, § 586, p 489; *Rinaldo v Holdeen*, 20 AD2d 745). Inasmuch as one bill of sale was executed by CIS on the date the letter reserving its rights was drafted, it seems unlikely that CIS would simultaneously intend both to reserve and waive its rights. This presents a fact situation as to whether a waiver of rights was intended by the bill of sale. Parol evidence is therefore admissible to explain or even contradict the recital of consideration contained therein. Consequently, summary judgment is inappropriate. The order at Special Term should be reversed and the complaint should be reinstated.

DILLON, P. J., CARDAMONE, SIMONS and WITMER, JJ. concur.

Order unanimously reversed, without costs, and motion denied. ——————