FLAMBEAU PRODUCTS CORPORATION, a Wisconsin corporation, Plaintiff-Respondent-Petitioner,

v.

HONEYWELL INFORMATION SYSTEMS, INC., a foreign corporation, Defendant-Appellant.

Supreme Court

*No. 82–307. Argued October 31, 1983.—Decided January 4, 1984.*

(Also reported in 341 N.W.2d 655.)

96

For the plaintiff-respondent-petitioner there were briefs by *Karen A. Mercer, Clyde C. Cross* and *Cross, Mercer and Maffei,* Baraboo, and oral argument by *Clyde C. Cross.*

For the defendant-appellant there was a brief by *J. Leroy Thilly, Barbara L. Block, James E. Bartzen* and *Boardman, Suhr, Curry & Field,* Madison, and oral argument by *Mr. Thilly.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of a published decision of the court of appeals, *Flambeau Products Corp. v. Honeywell Information Systems,* 111 Wis. 2d 317, 330 N.W.2d 228 (1983) (*Flambeau II*), reversing an order of the circuit court for Sauk county,

Howard W. Latton, circuit judge. The circuit court entered an order for an interlocutory judgment extinguishing the obligations of Flambeau Products Corporation to Honeywell Information Systems, Inc., under an installment purchase contract and discharging Honeywell's security interest in the purchased equipment.[1] The circuit court concluded that sec. 401.207, Stats. 1981–82, was not applicable to this case in which Flambeau tendered a check in full satisfaction of Honeywell's claim and that Honeywell's acceptance of Flambeau's check constituted an accord and satisfaction discharging the balance of Honeywell's claim, notwithstanding Honeywell's reservation of rights to claim the balance due. The court of appeals reversed the judgment of the circuit court, holding that sec. 401.207 is applicable to Flambeau's check offered in full payment of the claim and that Honeywell effectively reserved its rights under sec. 401.207. Because we agree with the circuit court's interpretation of sec. 401.207 and its application of the common law doctrine of accord and satisfaction, we reverse the decision of the court of appeals and affirm the circuit court's order for an interlocutory judgment.

## I.

The facts are set forth in detail in the decision of the court of appeals in *Flambeau II,* and it is sufficient for us to summarize them briefly here.

Flambeau Products Corporation (plaintiff-buyer) entered into purchase contracts with Honeywell Information Systems, Inc. (defendant-seller) in September 1975 for the acquisition of computer equipment. Under the purchase contracts Flambeau was obligated to pay 60

---

[1] The judgment is interlocutory because Flambeau's second cause of action seeking damages from Honeywell for Honeywell's failure to supply a termination statement discharging the lien has not yet been tried.

monthly installments over a period of five years and had the right to prepay the entire amount at any time. In connection with the equipment purchase and as part of the purchase price, Flambeau was to receive $14,000 worth of computer programming services that Flambeau could use until October 1, 1976. Flambeau used part of these services prior to October 1, 1976 but stopped requesting programming services when it unilaterally decided they were not helpful.

In late 1976 or early 1977, at Flambeau's request, Honeywell advised Flambeau that the amount due to prepay the contract was $109,412. Without further discussion, Flambeau sent Honeywell a check for $95,412. On the back of the check were the words "in full payment of liability to you for equipment. . . ." Flambeau's check was accompanied by a letter which stated that the "check in the amount of $95,412 [is] in full settlement of notes we owe to Honeywell in connection with purchase of our computer system." The calculations set forth in the letter show that $14,000 for "unused programming" was deducted from the sum of $109,412 to arrive at the net payment. Honeywell cashed the check, retained the proceeds, notified Flambeau that the check was not accepted as payment in full, and requested Flambeau to remit the balance due plus interest. Honeywell does not on this review assert that the check cashing or retention of the proceeds was unauthorized.

Flambeau sought a declaratory judgment that it had no further obligations to Honeywell and that Honeywell had no valid security interest in its equipment. Honeywell counterclaimed for $14,000. The circuit court granted summary judgment to Flambeau on the ground that there was an accord and satisfaction. On appeal the court of appeals reversed the circuit court in an unpublished decision filed on June 17, 1980 (*Flambeau I*). It is not entirely clear whether the court of appeals

held that summary judgment was not appropriate because there was a dispute of material facts or that as a matter of law Flambeau could not, on the basis of the facts presented in the record on summary judgment, claim an accord and satisfaction. In any event on remand a trial was held on the issue of accord and satisfaction.

After trial to the court, the circuit court held that sec. 401.207 was not applicable to this case and that the offer and acceptance of Flambeau's check constituted an accord and satisfaction discharging the balance of Honeywell's claims. The circuit court ordered judgment in favor of Flambeau. In *Flambeau II,* the court of appeals reversed the circuit court's order, addressing only the issue of the applicability of sec. 401.207 to this case, not the issue of accord and satisfaction.[2]

Two issues are raised on review:

(1) Does the Uniform Commercial Code sec. 1–207 (sec. 401.207, Stats. 1981–82) alter the common law rule of accord and satisfaction as it relates to full payment checks?[3]

---

[2] Honeywell argues on review that since the same facts were presented in the trial as in the summary judgment *Flambeau I* established as the law of the case that Flambeau is not entitled to claim an accord and satisfaction. Honeywell made this same argument to the court of appeals. We are not persuaded by Honeywell's argument. The holding in *Flambeau I* is subject to interpretation, and the court of appeals in *Flambeau II* apparently interpreted its decision in *Flambeau I* as not requiring reversal of the circuit court's order on the issue of accord and satisfaction.

[3] We use the term "full payment check," but there are other terms used to describe a situation in which the check is offered upon a condition and the payee understands that cashing the check constitutes an assent to the condition. For example: check in full settlement, conditional check, conditioned check. See Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code,* 78 Colum. L. Rev. 48, 49–50 (1978); 6 Corbin, *Contracts* sec. 1277, pp. 122–23 (1962).

(2) If sec. 401.207, Stats. 1981–82, does not alter the common law rule, may Flambeau claim an accord and satisfaction in this case?

## II.

Under the common law rule of accord and satisfaction, if a check offered by the debtor as full payment for a disputed claim is cashed by the creditor, the creditor is deemed to have accepted the debtor's conditional offer of full payment notwithstanding any reservations by the creditor. In other words, the creditor's cashing the full payment check constitutes an accord and satisfaction which discharges the entire debt.

The common law rule of accord and satisfaction promotes fairness by protecting the bona fide expectations of a debtor who tenders payment on condition that it will be accepted as payment in full. The rule also provides a method of settling disputes without litigation.

Honeywell argues that sec. 1–207 of the Uniform Commercial Code (UCC) (sec. 401.207, Stats 1981–82) alters the common law rule of accord and satisfaction and permits the seller-creditor to accept and cash the check offered as payment in full and to explicitly reserve the right to obtain payment from the buyer-debtor of the balance due.

Sec. 1–207 (sec. 401.207, Stats. 1981–82) provides as follows:

"A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient."

Sec. 1–207 of the UCC became sec. 401.207 of the law of Wisconsin on July 1, 1965. Although the language

of sec. 1–207 can be read to apply to a full payment check, the words of sec. 1–207 do not compel this conclusion. It is generally conceded that the scope and meaning of sec. 1–207 are unclear, Farnsworth, *Contracts* sec. 4.23, p. 283 (1982), and courts and commentators are divided as to whether sec. 1–207 has changed the common law principles relating to full payment checks.[4] The issue of the applicability of sec. 1–207 (sec.

[4] For authorities that sec. 1–207 has altered the common law of accord and satisfaction, see *Bivins v. White Dairy*, 378 So. 2d 1122, 1124 (Ala. Civ. App. 1979) (dictum); *Miller v. Jung*, 361 So. 2d 788, 789 (Fla. App. 1978); *Kilander v. Blickle Co.*, 280 Or. 425, 429, 571 P.2d 503 (1977) (dictum); *Braun v. C.E.P.C. Distributors, Inc.*, 77 App. Div. 2d 358, 433 N.Y.S.2d 447, 449–50 (1980); *Scholl v. Tallman*, 247 N.W.2d 490, 492 (S.D. 1976); White & Summers, *Handbook of the Law Under the Uniform Commercial Code* sec. 13–21 (2d ed. 1980); Calamari & Perillo, *Contracts* sec. 5-16, p. 197 (2d ed. 1977).

For the view that sec. 1–207 does not affect the common law of accord and satisfaction, see *Chancellor, Inc. v. Hamilton Appliance Co., Inc.*, 175 N.J. Super. 345, 352, 418 A.2d 1326 (1980); *Brown v. Coastal Truckways, Inc.*, 44 N.C. App. 454, 458, 261 S.E.2d 266 (1980); *State Department of Fisheries v. J–Z Sales Corporation*, 25 Wash. App. 671, 681–82, 610 P.2d 390 (1980); *Jahn v. Burns*, 593 P.2d 828, 830 (Wyo. 1979); 6 Corbin, *Contracts* sec. 1979 (Supp. 1982, pt. 2); 2 Restatement (Second), *Contracts* sec. 281, comment *d*, p. 384 (1979) (sec. 1–207 "need not be read as changing" the common law rules); Hawkland, *The Effect of U.C.C. § 1207 on the Doctrine of Accord and Satisfaction by Conditional Check*, 74 Comm. L.J. 329, 331 (1969); McDonnell, *Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence*, 126 U. Pa. L. Rev. 795, 824–28 (1978); Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code*, 78 Colum. L. Rev. 48 (1978); Comment, *U.C.C. Section 1–207 and the Full Payment Check: The Struggle Between the Code and the Common Law—Where Do the Debtor and Creditor Fit in*, 7 U. Dayton L. Rev. 421, 422–23, 435 (1982); Comment, *Accord and Satisfaction: Conditional Tender by Check Under the Uniform Commercial Code*, 18 Buffalo L. Rev. 539, 549 (1969); Note, *Does U.C.C. Section 1–207 Apply to the Doctrine of Accord and Satisfaction by Conditional Check*, 11 Creighton L. Rev. 515, 527 (1977).

401.207, Stats. 1981–82) to the full payment check is one of first impression in this state.

Since the language of sec. 1–207 does not provide an answer to the question of whether the section redefines the common law of accord and satisfaction as it applies to full payment checks, we attempt to determine the drafters' intent[5] by examining the official comments to sec. 1–207 and the legislative history and by applying the rules of interpretation set forth in the UCC.

The official UCC Comments generally point out any significant changes which a section makes in existing law. If the drafters of the UCC intended sec. 1–207 to effect a change in the full payment check rule, one would suppose that the official UCC Comment and commentary of the Commercial Code Committee[6] of the

See also Fritz v. Marantette, 404 Mich. 329, 273 N.W.2d 425 (1978), which refused to decide the question. This case has been criticized in Harris, Commercial Transaction, 1979 Annual Survey of Michigan Law, 26 Wayne L. Rev. 469 (1980).

For other discussions of sec. 1–207, see Quinn, Uniform Commercial Code Commentary and Law Digest sec. 1–207[A][1][2] (1983 Cum. Supp. No. 1) ; Caraballo, The Tender Trap : U.C.C. § 1–207 and Its Applicability to an Attempted Accord and Satisfaction by Tendering a Check in a Dispute Arising from a Sale of Goods, 11 Seton Hall L. Rev. 445 (1981).

[5] As Dean Rosenthal wisely explains, "Any assertion of the 'intention' of one legislature, much less that of all the enacting legislatures [of the UCC, namely the American Law Institute and the National Conference of Commissioners on Uniform State Laws] collectively, in such circumstances, requires wondrous confidence." Rosenthal, Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code, 78 Colum. L. Rev. 48, 58 (1978).

[6] A commentary entitled Summary of Changes or Clarifications was prepared by the Commercial Code Committee of the Wisconsin Legislative Council in its section-by-section analysis of the Uniform Commercial Code (UCC) prior to the adoption of the UCC in Wisconsin. The commentary was designed to be used with the official text and official comments of the UCC. See Introduction, 1961 Report of the Wisconsin Legislative Council, vol. III, part 2, reproduced in 40A, West's Wis. Stats., Annot. vii (1964).

Wisconsin Legislative Council would have described such a significant change. They do not. Professor Hawkland notes that "a strong argument can be made that the failure of the comment to 1–207 to mention such a sweeping change as would be caused by the application of the section" to the full payment check, indicates that no such result was intended. Hawkland, *The Effect of U.C.C. § 1–207 on the Doctrine of Accord and Satisfaction by Conditional Check,* 74 Comm. L.J. 329, 331 (1969).

Significantly both the official UCC Comment to sec. 1–207 and the commentary of the Commercial Code Committee of the Wisconsin Legislative Council to sec. 401.207 suggest that sec. 1–207 does not apply to a full payment check.

The official UCC Comment to sec. 1–207 reads as follows:

"1. This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice,' 'under protest,' 'under reserve,' 'with reservation of all our rights,' and the like. All of these phrases completely reserve all rights within the meaning of this section. The section therefore contemplates that limited as well as general reservations and acceptance by a party may be made 'subject to satisfaction of our purchase,' 'subject to acceptance by our customers,' or the like.

"2. This section does not add any new requirement of language of reservation where not already required by law, but merely provides a specific measure on which a party can rely as he makes or concurs in any interim adjustment in the course of performance. It does not affect or impair the provisions of this Act such as those under which the buyer's remedies for defect survive acceptance without being expressly claimed if notice of the defects is given within a reasonable time. Nor does it disturb the policy of those cases which restrict the effect of a waiver of a defect to reasonable limits under

the circumstances, even though no such reservation is expressed.

"The section is not addressed to the creation or loss of remedies in the ordinary course of performance but rather to a method of procedure where one party is claiming as of right something which the other feels to be unwarranted."

Various interpretations of sec. 1–207 and the official comment have been suggested. Professor Hawkland and Dean Rosenthal conclude that the official comment indicates that sec. 1–207 is not applicable to full payment checks. Professor Hawkland reaches this conclusion by focusing on the phrase "performance along the lines contemplated by the contract" in the comment.[7] The official UCC Comment, according to Professor Hawkland, suggests that sec. 1–207 was intended to apply to ongoing contracts, not to full payment checks that terminate the contractual arrangement. Hawkland, *The Effect of U.C.C. 1–207 on the Doctrine of Accord and Satisfaction by Conditional Check*, 74 Comm. L.J. 329, 331 (1969).

Dean Rosenthal suggests an alternative interpretation of sec. 1–207 and the official UCC Comment. He suggests that sec. 1–207 applies "only where one party's acquiescence in the other's performance or demand might, *by operation of law*, result in a waiver or other basis for prejudicing his rights. . . . Under this interpretation, sec. 1–207 would not apply where the challenge was *expressly* communicated, as in a check offered in satisfaction of an obligation on a clear take-it-or-leave-it basis." Rosenthal, *Discord and Dissatisfaction:*

---

[7] One commentator suggests that those who support the idea that sec. 1–207 overrules the common law have not offered any satisfactory explanation why payment and performance are treated separately in sec. 1–208 but performance should be viewed as including payment in sec. 1–207. 6 Corbin, *Contracts* sec. 1279, p. 396 (Supp. 1982, pt. 2).

*Section 1–207 of the Uniform Commercial Code,* 78 Colum. L. Rev. 48, 63–64 (1978).

The commentary to the Wisconsin Commercial Code Committee also suggests that sec. 401.207 was intended to apply to fact situations other than full payment checks.[8]

While the official UCC Comment and the Wisconsin Commercial Code Committee's commentary indicate that sec. 401.207 should not be interpreted to apply to a full payment check, they do not conclusively settle the question. We therefore turn to the legislative history of sec. 1–207 for guidance in deciding the issue before us. The legislative history offers conflicting inferences.

One piece of legislative history suggests that sec. 1–207 should be read as not being applicable to full payment checks. When sec. 1–207 first appeared in the UCC it coexisted with another provision, sec. 3–802(3), which substantially codified the common law rule of the effect of the full payment check. Sec. 3–802(3) provided:

---

[8] The Committee's summary of changes or clarifications of the law made by sec. 401.207 states:

*"Summary of changes or clarifications*

[Sec. 401.207] provides a method of procedure whereby one party claiming a right which the other party feels to be unwarranted can make certain that the fact that he proceeds with or promises or assents to performance will not operate as a waiver of his claim to such right; there is no similar general provision in the present law, though the policy of Wis. Stat. sec. 121.49 is similar." See sec. 401.207, West's Wis. Stat. Annot. (1964).

Sec. 121.49, Stats. 1961, provided:

"Acceptance does not bar action for damages. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

"Where a check or similar payment instrument provides that it is in full satisfaction of an obligation the payee discharges the underlying obligation by obtaining payment of the instrument unless he establishes that the original obligor has taken unconscionable advantage in the circumstances."[9]

---

[9] The official UCC Comment to sec. 3–802(3) reads:

"5. Checks are frequently given with a term providing that they are "in full payment of all claims," or similar language. The holder who obtains payment of such a check takes its benefits subject to the drawer's stipulation that he releases the original obligation. Even where the obligation is for an undisputed and liquidated debt there is no unfairness in the tender and acceptance of an accord and satisfaction; and in this respect subsection (3) changes the law in a number of states.

"The exception stated as to unconscionable advantage taken by the obligor has been recognized in a considerable number of decisions. A genuine accord and satisfaction is to be found only where the parties are dealing at arm's length and on fair terms of bargaining equality, without unfair advantage taken by either party. The following cases illustrate the application of the exception:

"a. The debtor sends the creditor a false statement of their account with a check which stipulates that it is in full payment. The creditor cashes the check in good faith reliance on the statement of account. The original obligation is not discharged.

"b. The debtor, knowing that it is the practice of the creditor's clerks to put through checks without examining accounts, sends a check for half the amount due which states that it is in full payment. The check is cashed without examining the account. The obligation is not discharged.

"c. The debtor sends a check for less than the amount due which states that it is in full payment. The creditor insists that the amount is not correct, and finally cashes the check as the only available means of obtaining any payment. The original obligation is not discharged.

"d. An employer hands an employee a check for less than the full amount of wages due which states that it is in full payment, and threatens to fire the employee if he does not accept the amount. When the employee cashes the check the original obligation is not discharged.

"e. An employer hands an employee a check for less than the full amount of wages due which states that it is in full payment.

Since sec. 3–802(3) expressly recognized that acceptance of a full payment check was effective to create an accord and satisfaction, it creates an inference that sec. 1–207 was intended to apply to a different fact situation. Sec. 3–802(3) was ultimately dropped from the UCC, but the fact that secs. 1–207 and 3–802(3) both were part of the UCC at the same time suggests that sec. 1–207 should not be read to change the common law recognizing the effectiveness of the full payment check.

On the other hand, another piece of legislative history suggests that sec. 1–207 was intended to change the common law rule. The 1961 Report of the New York Commission on Uniform State Laws, in its section-by-section annotations reflecting the relationships between the UCC and then existing New York law, viewed sec. 1–207 as changing the common law rules governing payments tendered in full settlement. The New York report stated as follows:

"[Section 1–207] permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment, performance, etc. without losing his rights . . . to sue for the balance of the payment, so long as he explicitly reserves his rights. . . . The Code rule would permit . . . the acceptance of a part performance or payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the performance or payment."

The New York report is of some significance since New York took a lead in studying the UCC and suggesting revisions during the drafting of the Code, and the report was highly influential in bringing about the adoption of the UCC in that key state. Rosenthal, *supra*, 78 Colum. L. Rev. 48, 58, 61, 62. Not surprisingly New York courts have concluded that sec. 1–207 does apply

He refuses the employee's demands for the proper amount, and the employee cashes the check in order to obtain money for subsistence. The obligation is not discharged."

to full payment checks.[10] The New York report has no binding effect, however, on our interpretation of the UCC as passed by the Wisconsin legislature, and there is no evidence that this state intended to follow the New York interpretation or was aware of it.[11] Because the legislative history is subject to conflicting inferences, it does not aid us in interpreting sec. 1–207.

Since we are not aided by the language of the Code, the official comments, or the legislative history, we look to the rules of construction set forth in the UCC. One rule of construction set forth in the UCC itself is that the UCC is to be liberally construed and applied to promote its underlying purposes and policies. Sec. 1–102, UCC; sec. 401.102, Stats. 1981–82. The underlying purposes and policies of the UCC as set forth in the UCC are as follows:

"(a) To simplify, clarify and modernize the law governing commercial transactions;
"(b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

---

[10] See, *e.g., Braun v. C.E.P.C. Distribs., Inc.*, 433 N.Y.S.2d 447 (N.Y. App. Div., 1st Dept. 1980); *Continental Information Sys. Corp. v. Mutual Life Ins. Co. of N.Y.*, 432 N.Y S.2d 952 (N.Y. App. Div., 4th Dept. 1980); *Ayer v. Sky Club, Inc.*, 418 N.Y.S.2d 57 (N.Y. App. Div., 1st Dept., 1979) (1979), *appeal dismissed*, 397 N.E.2d 758 (1979).

[11] The contract provided that it was governed by the laws of Massachusetts. Massachusetts has, like Wisconsin, adopted sec. 1–207 of the UCC. Honeywell's brief advises the court that Massachusetts has no reported decision resolving the issue presented in the instant case. Because the commentary in the Massachusetts annotation to sec. 1–207 is similar to the New York commentary, Honeywell argues that we should assume the Massachusetts court will follow the New York cases. We are not persuaded that Massachusetts would necessarily adopt the New York courts' interpretation of sec. 1–207. We assume Massachusetts would adopt the same reasoning this court does.

"(c) To make uniform the law among the various jurisdictions." Sec. 1–102(2), UCC; sec. 401.102(2), Stats. 1981–82.

Applying sec. 1–207 to the full payment check would not necessarily serve to "simplify," or "clarify," or "modernize the law governing commercial transactions." Nor would an application of sec. 401.207 promote the purpose and policy of the UCC of permitting "the continued expansion of commercial practice through . . . agreement of the parties." All that would be accomplished would be the elimination of the simple technique of the full payment check; sophisticated parties might still arrange their affairs to achieve the benefits of the full payment check. See Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code,* 78 Colum. L. Rev. 48, 71–74 (1978).

As to the purpose of achieving uniformity among the jurisdictions adopting the UCC, we note that the state courts have not been uniform in their interpretation of sec. 401.207, and the developing trend appears to be to interpret sec. 401.207 as not changing the common law rule applicable to full payment checks.

The official UCC Comment to sec. 1–102(2) advises that "the text of each section should be read in the light of the purpose and policy of the rule or principle in question. . . ." We should therefore consider the purposes of the common law rule of accord and satisfaction and full payment checks and the effect on commercial practices of interpreting sec. 401.207 as overriding the common law rule to determine how sec. 401.207 should be interpreted.

The common law rule that acceptance of a full payment check is an accord and satisfaction discharging the entire debt is a long-standing doctrine resting not

only on principles of contract law but on principles of sound public policy, that is, interests of resolving disputes informally without litigation and of fairness. Use of the full payment check by parties bargaining at arm's length is a convenient and valuable way of resolution of dispute through agreement of the parties. The interests of fairness dictate that a creditor who cashes a check offered in full payment should be bound by the terms of the offer. The debtor's intent is known, and allowing the creditor to keep the money disregarding the debtor's conditions seems unfair and violative of the obligation of good faith which the UCC makes applicable to every contract or duty. Sec. 1–203, UCC; sec. 401.-203, Stats. 1981–82. The doctrine of accord and satisfaction includes safeguards designed to protect a creditor from an overreaching debtor: there must be a good faith dispute about the debt; the creditor must have reasonable notice that the check is intended to be in full satisfaction of the debt. One commentator called the rule binding the creditor upon cashing a full payment check "a short cut to complete justice." 6 Corbin, *Contracts* sec. 1279, p. 130 (1962).[12] Another commentator noted:

"It is unfair to the party who writes the check thinking that he will be spending his money only if the whole dispute will be over, to allow the other party, knowing of that reasonable expectation, to weasel around the deal by putting his own markings on the other person's checks. There is no reason why s. 1–207 should be interpreted as being an exception to the basic duty of good

[12] In contrast, the full payment check has been described as follows: "Offering a check for less than the contract amount, but in 'full settlement' inflicts an exquisite form of commercial torture on the payee." White and Summers, *Handbook of the Law Under the Uniform Commercial Code*, sec. 13–21, p. 544 (2d ed. 1980). As we discuss later, if there is "undue advantage" in the settlement, there will be no discharge. *Kercheval v. Doty*, 31 Wis. 476, 485 (1872).

faith, when it is possible to interpret the two sections consistently. The academic writers who support this result offer no analysis, to the current knowledge of this treatise, which would justify licensing the recipient of the check to so deceive the drawer." 6 Corbin, *Contracts* sec. 1279, p. 396–97 (1982 Supplement).

Inasmuch as there is no clearly expressed legislative direction in sec. 401.207, we are reluctant to impair the long-recognized settlement tool of the full payment check. Accordingly we hold that sec. 401.207 is not applicable to the full payment check.

### III.

Since we conclude that sec. 401.207 is not applicable to the full payment check, we must decide whether there was a valid discharge by an accord and satisfaction in this case.

An "accord and satisfaction" is an agreement to discharge an existing disputed claim; it constitutes a defense to an action to enforce the claim. 6 Corbin, *Contracts* sec. 1276, p. 114 (1962). Like other contracts, an accord and satisfaction requires an offer, an acceptance, and consideration.

The parties do not dispute that Flambeau offered the check as full payment and that Honeywell's retention of the proceeds constituted an acceptance of the terms of the offer. The sole issue in contention between the parties in this case as to whether there was a valid accord and satisfaction is whether there was consideration for the discharge of the claim. The requirement of consideration tends to offer protection against unfairness, but several courts have tended to move away from conceptual abstractions of consideration in commercial contexts and to consider directly the issues of duress, un-

conscionability, bad faith or fraud. Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code,* 78 Colum. L. Rev. 48, 53 (1978). In any event, the parties have addressed the issue of consideration in traditional terms.

Three rules relating to consideration and accord and satisfaction come into play.[13]

First, the law in Wisconsin has long been that payment in full settlement of a claim which is disputed as to amount discharges the entire claim. Resolution of an actual controversy involving some subject of pecuniary value and interest to the parties is sufficient consideration of an accord and satisfaction. *Superior Builders, Inc. v. Large,* 52 Wis. 2d 563, 566, 190 N.W.2d 901 (1971) ; *Kercheval v. Doty,* 31 Wis. 476, 485 (1872).

A second rule, also of long-standing, is that payment of part of a debt which is not disputed as to amount does not discharge the debt altogether, even when it is expressly agreed that the partial payment is received in full satisfaction. The debtor's mere refusal to pay the full claim does not make it a disputed claim. Where the refusal is arbitrary and the debtor knows it has no just basis, the payment of less than the full amount claimed does not operate as an accord and satisfaction even though it is tendered and received as such. This

[13] As noted previously, the contract provided that it was governed by the law of Massachusetts. The parties took the position that the law of Massachusetts and the law of Wisconsin are the same on the question of accord and satisfaction until shown otherwise. The parties' briefs relied almost exclusively on Wisconsin cases, treating the common law of the two states the same. Following the parties' lead, we have examined Wisconsin cases, not Massachusetts cases, and we have deemed Massachusetts law to be the same as Wisconsin's since there was no showing that Massachusetts law is different.

rule is based on the principle that a part payment furnishes no consideration for relinquishing the balance of the debt. *Robinson v. Marachowsky*, 184 Wis. 600, 606–607, 200 N.W. 398 (1924); *Holman Mfg. Co. v. Dapin*, 181 Wis. 97, 99, 100, 193 N.W. 986 (1923), citing *Pinnel's Case*, 3 Coke's Rep. 238; *Otto v. Klauber*, 23 Wis. 471 (1868).[14]

The third rule, also of long duration, is that when the amount of a debt is undisputed but an offset is claimed arising directly out of the contract of sale of goods and not out of any collateral transaction, the debt is a single claim which is disputed in amount. Payment in full settlement of less than the amount claimed operates as an accord and satisfaction. The question whether an offset renders the claim disputed depends not on whether the offset is legally valid but on whether it was asserted in good faith. *Lange v. Darling & Co.*, 233 Wis. 520, 525, 290 N.W. 188 (1940); *Robinson v. Marachowsky*, 184 Wis. 600, 606, 607, 200 N.W. 398 (1924); *Holman Mfg. Co. v. Dapin*, 181 Wis. 97, 101, 193 N.W. 986 (1923); *Thomas v. Columbia Phonograph Co.*, 144 Wis. 470, 129 N.W. 522 (1911).

The parties disagree as to whether this case falls under the second or third rule. Honeywell claims that Flambeau's payment is nothing more than a part payment of an undisputed debt and that this case comes within the second rule, the undisputed debt rule. On the other hand,

---

[14] This rule has been criticized by the commentators. See, *e.g.*, Farnsworth, *Contracts* sec. 4.21–4.23 (1983). Although this court has not directly discarded the common law rule allowing the creditor to accept a check offered as payment in full and to then sue for the balance of the claim on the ground that the release was void for want of consideration, it has not viewed the rule requiring consideration with favor. *Herman v. Schlesinger*, 114 Wis. 382, 400, 401, 90 N.W. 460 (1902), quoted with approval in *Petersime Incubator Co. v. Klinke*, 248 Wis. 166, 21 N.W.2d 377 (1946).

Flambeau asserts that its good faith claim of offset rendered the entire debt disputed as to amount and that this case comes within the third rule, the "offset" rule.

The circuit court made a finding that although there was no dispute about the account known to Honeywell until the check for $95,412 was tendered by Flambeau, when Honeywell received the check it was faced with an offer by Flambeau to satisfy a disputed claim.[15] The circuit court further found that Flambeau's claim to the $14,000 offset "had sufficient support to make it bona fide rather than dishonest or fraudulent." Because our review of the record leads us to conclude that these findings are not clearly erroneous, we shall not set them aside. Sec. 805.17, Stats. 1981–82. In light of these findings, we conclude that the good faith claim of offset rendered the entire claim disputed.

Nevertheless Honeywell asserts that Flambeau's payment of $95,412, the undisputed amount, is not sufficient consideration for a discharge of the disputed claim. Honeywell urges that where there are disputed and undisputed portions of a claim, payment of the undisputed portion by a full payment check is not consideration for settlement of the disputed portion. In other words, Honeywell is saying that there was no dispute between the parties that $95,412 was owed. The only dispute concerned what, if any, part of the sum of $14,000 in excess of the $95,412 was due. According to Honeywell, since Flambeau only paid the claim then undisputed, Flambeau has not offered a compromise and Honeywell is being asked to surrender the whole part of the disputed claim without getting anything in return. Honeywell claims that since there was no consideration for settlement of the $14,000 disputed portion of the claim, there was no discharge of this disputed portion.

---

[15] Honeywell cites no authority for its assertion that a dispute must have been manifest before the settlement offer is made.

Honeywell relies on three cases to support its position: *Karp v. Coolview of Wisconsin, Inc.,* 25 Wis. 2d 299, 130 N.W.2d 790 (1964); *O'Leary v. Hannaford,* 258 Wis. 146, 44 N.W.2d 908 (1950); *Kendall v. Sump,* 204 Wis. 514, 235 N.W. 544 (1931). We conclude that these cases are inapposite.

In *Karp v. Coolview of Wisconsin, Inc., supra,* 25 Wis. 2d 299, a creditor extended credit to a debtor for thirteen airline tickets. The debtor claimed it was not responsible for six of these tickets and sent the creditor a check for seven of the tickets marked "paid in full" which the creditor cashed. The creditor sued for payment for the six tickets. The debtor pleaded accord and satisfaction. The court held for the creditor. Honeywell asserts that the case stands for the rule that there was no accord and satisfaction because the debtor admitted liability for seven tickets and its payment could not be consideration for settlement of the dispute over the remaining six. We do not read the case this way. The check specifically referred only to the seven tickets, the undisputed portion of the claim. The check made no reference to the six disputed tickets. It would be unreasonable to interpret a notation on a check as full payment of seven tickets as being full payment for thirteen tickets. This court concluded that since the debtor had not offered to settle the entire debt, the cashing of the check did not constitute an acceptance of an offer of accord.

In *O'Leary, supra,* 258 Wis. 146, unlike in this case, the amount due was liquidated and not disputed. Consequently the court held that the "amounts due the plaintiff were certain and stated . . . [and] cashing a check marked 'in full' did not constitute an accord and satisfaction."

In *Kendall v. Sump, supra,* 204 Wis. 514, 517, a farm tenant brought an action for his share of produce. There

was no dispute as to his right to certain amounts for certain produce less certain credits. However, the landlord claimed an offset of $150.08 which was disputed and which left the farm tenant with an amount due of only $6.04. The landlord sent the tenant a check for the sum of $6.04 which the tenant cashed. In *Kendall,* unlike in the instant case, the check was not marked "paid in full." There was no evidence that the tenant was told that the check was intended as full settlement. As the court said, "There is no evidence that the [tenant] ever agreed to this as a final settlement."

*Weidner v. Standard Life and Accident Ins. Co.,* 130 Wis. 10, 15, 110 N.W. 246 (1906), has been viewed by one commentator as supporting the position Honeywell is asserting.[16] In *Weidner,* the creditor, the insurance company, issued a check in full in the sum of $300 in settlement of a $3,000 claim by a widow under her husband's life insurance policy. *Weidner* is also distinguishable from the instant case. *Weidner* has been viewed as a case in which there were two separate and distinct claims and the acceptance of payment in full on one claim did not constitute an accord and satisfaction as to the other claim. *Sprinkmann Sons Corp. v. Bishopric Prods. Co.,* 340 F. Supp. 148, 149 (E.D. Wis. 1972). See also 1 Restatement (Second), *Contracts* sec. 74, comment *c,* p. 186 (1979). Perhaps *Weidner* can best be explained by noting that a purported accord and satisfaction will not be given effect where there is overreaching by the debtor. The plaintiff offered evidence that she was suffering from nervous exhaustion at the time she signed a full payment receipt from the insur-

[16] 6 Corbin, *Contracts* sec. 1289, p. 163, n. 89 (1962). Corbin also cites *Schulz Co. v. Gether,* 183 Wis. 491, 198 N.W. 433 (1924), for this proposition. There is language in *Schulz* supporting the citation but it appears that the court also viewed the two claims as separate and independent. See 183 Wis. at 494, 496. See 1 Restatement (Second), *Contracts* sec. 74, comment c, p. 186 (1979).

ance company less than three weeks after her husband died from injuries sustained in an assault.

The position Honeywell urges this court to adopt has been criticized by commentators[17] and courts. The majority rule apparently is that where the total claim is disputed, payment of the amount the debtor admits to be due supports the creditor's discharge of the entire debt on the cashing of the full payment check.[18]

We find unpersuasive Honeywell's assertion that the payment of the undisputed portion of a disputed claim by a check marked "paid in full" is not consideration for the disputed portion of the claim. Honeywell does not explain why we should treat a single contract out of which a dispute as to the performance of one party arises as if it were two divisible contracts, each of which must be negotiated separately. Furthermore, as the Oregon Supreme Court explained, "It would be too technical a use of the doctrine of consideration to release a well-counseled debtor who tenders a nominal amount beyond his admitted debt but to trap one less sophisticated who is induced to pay the undisputed amount in return for his creditor's illusory promise to forgive the rest." *Kilander v. Blickle Co.*, 280 Ore. 425, 571 P.2d 503, 505 (1977).

Honeywell's argument raises the spectre of overreaching if the court allows a debtor to force a creditor to discharge a debt when the debtor is paying only the undisputed portion. There can, of course, be overreaching by a debtor who tenders a full payment check. But overreaching can be policed through the doctrine of good faith. See 1 Restatement (Second), *Contracts* sec. 74, comment *c*, p. 186 (1979); Hillman, *Policing Contract*

[17] See, *e.g.*, 6 Corbin, *Contracts* sec. 1289, pp. 163–66 (1962).

[18] 6 Corbin, *Contracts* sec. 1289, p. 165 (1962). See also Calamari & Perillo, *Contracts* sec. 4–12, p. 155 (2d ed. 1977).

*Modification under the U.C.C.: Good Faith and the Doctrine of Economic Duress,* 64 Iowa L. Rev. 849 (1979).

In this case, however, the circuit court found that Flambeau asserted its offset in good faith. The parties dealt with each other at arm's length with mutual understandings as to the effect of usual commercial practices. Under these circumstances, we conclude it would be unfair to allow Honeywell to accept Flambeau's money which was offered on condition of full settlement and then to turn around and claim the right to sue Flambeau for the balance of its asserted claim.

For the reasons set forth we conclude that Honeywell's claim against Flambeau was discharged upon Honeywell's cashing the full payment check and retaining the proceeds. Accordingly we reverse the decision of the court of appeals and remand the matter to the circuit court for proceedings on Flambeau's claim against Honeywell not inconsistent with this opinion.

*By the Court.*—Decision of the court of appeals reversed; order for judgment of the circuit court affirmed and cause remanded.

STEINMETZ, J. (dissenting). I disagree with the majority that the check presented and cashed in this case was an accord and satisfaction.

The $14,000 worth of computer programming services was an inducement to enter into the purchase of the equipment. There is nothing in this record nor the opinion to be persuasive that the services had a separate value above and in addition to the value of the equipment purchased. The programming services appear to be a "throw-in" incentive to sell the equipment. The services may have been listed as a $14,000 value to the purchaser of the equipment, Flambeau; however, there is no evidence in the record as to the cost to Honeywell to provide those services or their actual value.

Flambeau did not disagree with the value of the equipment or the amount still owed on it. Its check paid for the amount due on the equipment which was not disputed minus the $14,000 for the unused programming services. It paid less than it owed on the equipment while not disputing the amount it owed on the equipment and therefore there was no accord and satisfaction.

Flambeau was not under the contract expected to pay $14,000 for programming services since it was a sales inducement only and therefore the unused services should not have been deducted from the undisputed equipment debt still owed.

I would hold that payment of part of the debt for the equipment which was not disputed did not discharge the debt altogether. The issue of $14,000 as a possible offset should have been tried to determine whether it had value independent of the equipment contract price.

WILLIAM A. BABLITCH, J. (dissenting). I dissent because I conclude that sec. 401.207, Stats., applies in this case. Section 401.102(2) delineates the underlying purposes and policies of the Uniform Commercial Code, including the policy of simplifying, clarifying and modernizing the law governing commercial transactions. Sec. 401.102(2)(a). Under sec. 401.102(1), chs. 401 to 409 must be liberally construed and applied to promote the underlying purposes and policies set forth in sec. 401.102(2).

I conclude that interpreting sec. 401.207, Stats., to allow a creditor to accept a conditional check under protest and reserve the right to obtain payment for any balance due is supported by the language of sec. 401.207. I also conclude that this interpretation promotes the policy of simplifying, clarifying and modernizing the law governing commercial transactions. As White and Summers note in *Handbook of the Law Under the Uniform*

*Commercial Code,* sec. 13–21 at 544 (2d ed. 1980), ". . . offering a check for less than the contract amount, but 'in full settlement' inflicts an exquisite form of commercial torture on the payee." Under the common law doctrine of accord and satisfaction, the payee may have to refuse the check, even if both parties agree that the amount tendered is due, in order to reserve the right to pursue a claim for any additional amount that the payor owes.[1] This commercially unreasonable result can be avoided by interpreting sec. 401.207 to allow the payee to cash the check and still retain the right to sue for the balance owing if the payee has reserved his or her rights.

In this case, Honeywell reserved its rights under sec. 401.207, Stats., by the letter it sent to Flambeau disputing Flambeau's assertion that Flambeau had satisfied all of its obligations under the purchase contracts. Because I conclude that sec. 401.207 applies in this case, and because Honeywell reserved its rights under that provision, I would hold that Honeywell reserved its right to demand full performance of Flambeau's obligations under the purchase contracts.

---

[1] This case presents a perfect example of this dilemma. In order to avoid the result that would occur under the common law doctrine of accord and satisfaction, Honeywell would be forced to return Flambeau's check for $95,412, an amount Flambeau concedes it owes Honeywell, in order to reserve the right to pursue its claim for $14,000 that it contends Flambeau still owes under the purchase contracts.